## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND
## BALTIMORE DIVISION

CONSUMER FINANCIAL
PROTECTION BUREAU
1700 G Street NW
Washington, DC 20552

CONSUMER PROTECTION
DIVISION, Office of the Attorney
General of Maryland
200 St. Paul Place, 16th Floor
Baltimore, MD 21202
Baltimore County

                    Plaintiffs,

      v.

GENUINE TITLE, LLC
11155 Dolfield Blvd., Suite 100
Owings Mills, MD 21117
Baltimore County

BRANDON GLICKSTEIN
3 Valleys Crest Court
Owings Mills, MD 21117
Baltimore County

GARY KLOPP
2915 Eden Drive
Manchester, MD 21102
Carroll County

ADAM MANDELBERG
807 Dominion Lane
Reisterstown, MD 21136
Baltimore County

Case No.

WILLIAM J. PETERSON, III
635 Prestwick Trail
Bel Air, MD 21014
Harford County

ANGELA POBLETTS
1930 Castleton Road
Darlington, MD 21034
Harford County

JAY ZUKERBERG
4714 Glenarm Avenue
Baltimore, MD 21206
Baltimore County

ALL COUNTY SETTLEMENTS,
LLC
2915 Eden Drive
Manchester, MD 21102
Carroll County

BTS MANAGEMENT AND
CONSULTING, LLC
929 Creek Park Road
Bel Air, MD 21014
Harford County

CARROLL ABSTRACTS, INC.
2915 Eden Drive
Manchester, MD 21102
Carroll County

MARC, LLC
1930 Castleton Road
Darlington, MD 21034
Harford County

MORTGAGE SERVICES, LLC
4940 Campbell Blvd.
Suite 210
Nottingham, MD 21236
Baltimore County

R&R MARKETING GROUP, LLC
807 Dominion Lane
Reisterstown, MD 21136
Baltimore County,

                              Defendants.

## COMPLAINT

Plaintiffs, the Consumer Financial Protection Bureau ("Bureau") and the Consumer

Protection Division, Office of the Attorney General of Maryland ("CPD"), allege as follows:

## INTRODUCTION

1.     The Bureau and the CPD bring this action against Genuine Title, LLC ("Genuine

Title"), Brandon Glickstein, Gary Klopp, Adam Mandelberg, William J. Peterson, III,  Angela

Pobletts, Jay Zukerberg, All County Settlements, LLC, BTS Management and Consulting, LLC,

Carroll Abstracts, Inc., MARC, LLC, Mortgage Services, LLC, and R&R Marketing Group, LLC

(collectively, "Defendants") to address Defendants' participation in an illegal scheme to exchange

kickbacks or things of value for referrals of settlement-service business in connection with

consumers' home-mortgage transactions.

2.     The Real Estate Settlement Procedures Act ("RESPA") prohibits giving or accepting

a "fee, kickback, or thing of value" in exchange for a referral of business related to a real-estate-

settlement service, including services ordinarily provided by title companies, such as title searches, title examinations, the provision of title certificates, and title insurance. 12 U.S.C. § 2607(a).

3.      A now-defunct Maryland title company, Genuine Title, LLC, from 2009 through 2013, gave things of value, including cash and marketing services, to loan officers for referrals of business.

## JURISDICTION AND VENUE

4.      This Court has subject-matter jurisdiction over this action because the action is "brought under Federal consumer financial law," 12 U.S.C. § 5565(a)(1), presents a federal question, 28 U.S.C. § 1331, and is brought by an agency of the United States, 28 U.S.C. § 1345. This Court has supplemental jurisdiction over the state-law claims because those claims are so related to the federal claims that they form part of the same case or controversy. 12 U.S.C. § 1367(a).

5.      Venue is proper in this district because a substantial amount of the transactions, acts, practices, and courses of conduct at issue occurred within this district, the Defendants all conducted business in this district, and resided in this district during the relevant period. 28 U.S.C. § 1391(b), (c); 12 U.S.C. §§ 2614, 5564(f).

## PARTIES

6.      The Bureau is an agency of the United States charged with regulating the offering and providing of consumer-financial products and services under "Federal consumer financial laws," 12 U.S.C. § 5491(a), including RESPA and the Consumer Financial Protection Act of 2010 ("CFPA"). 12 U.S.C. § 5481(12)(M), (14). The Bureau has independent litigating authority, 12 U.S.C. § 5564(a)-(b), including the authority to enforce RESPA and the CFPA. 12 U.S.C. § 2607(d)(4).

7.      The CPD, part of the Office of the Attorney General of Maryland, enforces regulatory and consumer-protection laws, including the Maryland Consumer Protection Act., Md. Code Ann., Com. Law §§ 13-101 through 13-501 (2013 Repl. Vol.) ("CPA").

8.      Genuine Title, LLC is a defunct title company that was headquartered in Owings Mills, Maryland. Genuine Title ceased operations in April 2014. Genuine Title offered and provided real-estate-settlement services to consumers primarily for personal, household, or family purposes, including but not limited to closing and settlement services, title searches, title examinations, and the provision of title certificates. *See* 12 U.S.C. § 2602(3). Genuine Title is therefore a "covered person" under the CFPA. 12 U.S.C. § 5481(6), (15)(A)(iii). Genuine Title also is a "merchant" under CPA § 13-101(g) because it directly or indirectly offered or made consumer goods, services, or credit available to consumers.

9.      Brandon Glickstein, a resident of Reisterstown, Maryland, served as Director of Marketing for Genuine Title. Glickstein had managerial responsibility for Genuine Title and substantially and materially participated in the conduct of its affairs, including the schemes described in this Complaint. Glickstein is therefore a "related person" under the CFPA. 12 U.S.C. § 5481(25)(C)(i)-(ii). Because Glickstein is a "related person," he is deemed a "covered person" under the CFPA. 12 U.S.C. § 5481(25). Glickstein also is a "merchant" under CPA § 13-101(g) because he directly or indirectly offered or made consumer goods, services, or credit available to consumers.

10.     Gary Klopp, a resident of Manchester, Maryland, participated in originating federally related mortgage loans to consumers primarily for personal, household, or family purposes. Klopp

provided "real estate settlement services," including but not limited to the taking of loan applications and loan processing. *See* 12 U.S.C. § 2602(3). Therefore, Klopp is a "covered person" under the CFPA. 12 U.S.C. § 5481(6), (15)(A)(iii). Klopp also is a "merchant" under CPA § 13-101(g) because he directly or indirectly offered or made consumer goods, services, or credit available to consumers.

11.     Adam Mandelberg, a resident of Reisterstown, Maryland, participated in originating federally related mortgage loans to consumers primarily for personal, household, or family purposes. Mandelberg provided "real estate settlement services," including but not limited to the taking of loan applications and loan processing. *See* 12 U.S.C. § 2602(3). Therefore, Mandelberg is a "covered person" under the CFPA. 12 U.S.C. § 5481(6), (15)(A)(iii). Mandelberg also is a "merchant" under CPA § 13-101(g) because he directly or indirectly offered or made consumer goods, services, and/or credit available to consumers.

12.     William J. Peterson, III, a resident of Bel Air, Maryland, participated in originating federally related mortgage loans to consumers primarily for personal, household, or family purposes. Peterson provided "real estate settlement services," including but not limited to the taking of loan applications and loan processing. *See* 12 U.S.C. § 2602(3). Therefore, Peterson is a "covered person" under the CFPA. 12 U.S.C. § 5481(6), (15)(A)(iii).  Peterson also is a "merchant" under CPA § 13-101(g) because he directly or indirectly offered or made consumer goods, services, and/or credit available to consumers.

13.     Angela Pobletts, a resident of Darlington, Maryland, participated in originating federally related mortgage loans to consumers primarily for personal, household, or family

purposes. Pobletts provided "real estate settlement services," including but not limited to the taking of loan applications and loan processing. *See* 12 U.S.C. § 2602(3). Therefore, Pobletts is a "covered person" under the CFPA. 12 U.S.C. § 5481(6), (15)(A)(iii). Pobletts also is a "merchant" under CPA § 13-101(g) because she directly or indirectly offered or made consumer goods, services, and/or credit available to consumers.

14.     Jay Zukerberg, a resident of Owings Mills, Maryland, served as Genuine Title's president at all times during Genuine Title's operations. Zukerberg had managerial responsibility for Genuine Title and substantially and materially participated in the conduct of its affairs, including the schemes described in this Complaint. Zukerberg is therefore a "related person" under the CFPA. 12 U.S.C. § 5481(25)(C)(i)-(ii). Because Zukerberg is a "related person," he is deemed a "covered person" under the CFPA. 12 U.S.C. § 5481(25). Zukerberg also is a "merchant" under CPA § 13-101(g) because he directly or indirectly offered or made consumer goods, services, and/or credit available to consumers.

15.     All County Settlements, LLC is an active Maryland entity in good standing. Its principal office is 2915 Eden Drive, Manchester, Maryland. Defendant Gary Klopp owns and controls All County Settlements, LLC and used the company in furtherance of his work to offer mortgage loans and real-estate-settlement services to consumers primarily for personal, household, or family purposes.

16.     BTS Management and Consulting, LLC is an active Maryland entity that is not in good standing. Its principal office is 929 Creek Park Road, Bel Air, Maryland. Defendant William J. Peterson, III owns and controls BTS Management and Consulting, LLC and used the company in

furtherance of the Pay-to-Play Scheme described in the Complaint associated with the offering of mortgage loans and real estate settlement services to consumers primarily for personal, household, or family purposes.

17.    Carroll Abstracts, Inc. is a forfeited Maryland entity that is not in good standing. Its principal office was at 2915 Eden Drive, Manchester, Maryland. Defendant Gary Klopp owned and controlled Carroll Abstracts, Inc. and used the company in furtherance of his work to offer mortgage loans and real-estate-settlement services to consumers primarily for personal, household, or family purposes.

18.    MARC, LLC is a dissolved Maryland entity. Its principal office was at 1930 Caseletleton Road, Darlington, Maryland. Defendant Angela Pobletts owned and controlled MARC, LLC and used the company in furtherance of her work to offer mortgage loans and real-estate-settlement services to consumers primarily for personal, household, or family purposes.

19.    Mortgage Services, LLC is an active Maryland entity in good standing. Its principal office is at 4940 Campbell Boulevard, Suite 210, Nottingham, Maryland. Defendant William J. Peterson, III owns a 50% interest in and controls Mortgage Services, LLC, and used the company in furtherance of the Pay-to-Play Scheme, described below, associated with the offering of mortgage loans and real-estate-settlement services to consumers primarily for personal, household, or family purposes

20.    R&R Marketing Group, LLC is an active Maryland entity in good standing. Its principal office is at 807 Dominion Lane, Reisterstown, Maryland. Defendant Adam Mandelberg and his wife each own 50% of R&R Marketing Group, LLC, and Mandelberg controlled the entity. Mandelberg used R&R Marketing Group, LLC in furtherance of his work to offer mortgage loans

and real-estate-settlement services to consumers primarily for personal, household, or family

purposes.

## FACTS

**A.      Genuine Title gave kickbacks and things of value to loan offers in exchange for referrals of business.**

21.      In 2005, Zukerberg founded Genuine Title, a title-service company that offered real-

estate-closing services for mortgage-origination and refinance transactions. Genuine Title

conducted real-estate closings for federally related mortgages. Genuine Title ceased operations in

April 2014.

22.      Genuine Title's services included title searches, title examinations, the provision of

title certificates and title insurance, and the handling of the processing and closing, or settlement, of

real-estate transactions. The majority of Genuine Title's settlement services were for refinance

transactions.

23.      A consumer refinancing a mortgage ordinarily does not have a preferred title

company; instead, a consumer typically relies on the loan officer processing the mortgage to

recommend a title company.

24.      Genuine Title, through Zukerberg and Glickstein, developed and operated unlawful

schemes to provide kickbacks that incentivized loan officers to refer consumers to close their

federally related mortgage loans with Genuine Title.

**B.      Genuine Title provided marketing services to loan officers in exchange for referrals of business.**

25.      From 2009 through 2013, Glickstein managed a scheme in which Genuine Title provided marketing services to loan officers and, in exchange, the loan officers referred settlement-service business for federally related mortgages to Genuine Title by recommending Genuine Title to borrowers (the "Marketing Services Scheme").

26.      Through the Marketing Services Scheme, Genuine Title provided and paid for a variety of marketing services to loan officers. For example, Genuine Title purchased marketing leads – data on consumers likely to refinance a mortgage – from a third-party vendor and provided them to loan officers. In exchange, the loan officers referred loans for closing to Genuine Title.

27.      For other loan officers, Genuine Title provided additional marketing services. For these loan officers, Genuine Title not only analyzed and purchased leads from a third-party vendor, but it also paid for marketing letters directed to the consumer leads to be printed, folded, stuffed into envelopes, and mailed.

28.      Zukerberg participated in developing the Marketing Services Scheme and, as Genuine Title's president, he directed the company to fund the scheme, but Glickstein oversaw its execution. Glickstein personally tailored many of the leads that Genuine Title provided to loan officers participating in the Marketing Services Scheme; directed the frequency and volume of letters mailed out on behalf of loan officers participating in the Marketing Services Scheme; and managed the relationships with third-party vendors that printed the materials used in loan officers' direct-mail campaigns paid for by Genuine Title. In addition, Glickstein ensured that Genuine Title paid the

invoices submitted by the third-party vendors who printed materials used in loan officers' direct-mail campaigns.

29.     Although different loan officers negotiated specific marketing arrangements with Genuine Title, loan officers participating in the Marketing Services Scheme did not pay for the full cost of the leads, the printing and processing of the marketing materials, or the cost of postage to mail the materials to the leads.

30.     Through the Marketing Services Scheme, Genuine Title offered loan officers valuable services to increase their profits in a competitive environment. The scheme was also intended to increase the amount of business generated by the participating loan officers and, through referrals, to increase Genuine Title's profits.

**C.     Genuine Title paid loan officers for referrals of settlement service business.**

31.     From 2009 through 2013, Genuine Title, through Zukerberg and Glickstein, also developed and operated a scheme in which Genuine Title entered into agreements or understandings with loan officers whereby the loan officers received cash payments from Genuine Title, generally ranging from about $175–$800, for each loan the loan officer referred to Genuine Title for settlement services ("Pay-to-Play Scheme"). From 2009 until 2013, Genuine Title paid loan officers for referrals of settlement business for federally related mortgage loans through the Pay-to-Play Scheme.

32.     Zukerberg knew that it would look "fishy" if Genuine Title paid cash directly to the loan officers from its operating account. So, instead, Genuine Title funneled the payments to loan officers through entities, typically limited-liability companies, created by the loan officers. In some

cases, Genuine Title instructed the loan officers to set up these entities so that Genuine Title could make payments to the entity instead of directly to the loan officer. In other instances, Genuine Title made payments for referrals to entities the loan officers already used for other business purposes.

33.     Through the Pay-to-Play Scheme, Genuine Title gave something of value – cash – and the loan officers received the cash in exchange for the referral of business. The scheme was also intended to increase the amount of business generated by the participating loan officers and, through referrals, to increase Genuine Title's profits.

**D.     Gary Klopp**

34.     Gary Klopp has managed a team of loan officers at various financial institutions in the greater Baltimore area for more than 20 years.

35.     Beginning in about 2009, Klopp began receiving payments from Genuine Title for referrals of business made under the Pay-to-Play Scheme. Genuine Title paid Klopp roughly $400 for each loan Klopp, or a loan officer managed by Klopp, referred to Genuine Title. Rather than pay Klopp directly, Genuine Title made the payments to All County Settlements, LLC and Carroll Abstracts, Inc. – Maryland entities created by Klopp and controlled by Klopp. Neither Klopp nor these entities provided actual services in return for these payments.

36.     Klopp did not disclose his participation in the Pay-to-Play Scheme to consumers to whom he and his team offered or provided mortgage-loan services.

37.     Between 2011 and 2013, Klopp received more than $500,000 from Genuine Title through Carroll Abstracts, Inc. and All County Settlements, LLC for loans Klopp, or loan officers managed by Klopp, referred to Genuine Title for settlement services.

E.      **Adam Mandelberg**

38.     Adam Mandelberg worked as a loan officer and managed a team of loan officers in the greater Baltimore area for more than 15 years.

39.     Mandelberg received payments from Genuine Title for referrals of business made under the Pay-to-Play Scheme. Genuine Title and Mandelberg had a profit-sharing agreement in which Genuine Title deducted its "hard" costs and split the remaining profits with Mandelberg. For example, if a consumer referred by Mandelberg, or someone managed by Mandelberg, paid Genuine Title $1,000 to close a loan and Genuine Title had $600 in costs, Mandelberg and Genuine Title split the $400 profit.

40.     Genuine Title did not pay Mandelberg his share of the profits directly. Instead, Genuine Title paid R&R Marketing Group LLC, a Maryland entity created and controlled by Mandelberg.

41.     Neither Mandelberg nor R&R Marketing Group, LLC provided actual services in consideration for his share of the profits.

42.     Mandelberg did not disclose his participation in the Pay-to-Play Scheme to consumers to whom he and his team offered or provided mortgage-loan services.

43.     Between 2011 and 2013, Mandelberg received about $250,000 from Genuine Title through R&R Marketing Group, LLC for loans Mandelberg, or loan officers managed by Mandelberg, referred to Genuine Title for settlement services.

F.      **William J. Peterson, III**

44.     William Peterson is the president of a mortgage brokerage in Nottingham, Maryland.

45.     Peterson received payments from Genuine Title for loans he referred to Genuine Title for settlement services, and for loans referred by loan officers he managed, under the Pay-to-Play Scheme.

46.     Genuine Title did not pay Peterson directly for the referrals. Instead Genuine Title made payments to BTS Management and Consulting, LLC and Mortgage Services, LLC, Maryland – entities created and controlled by Peterson.

47.     Neither Peterson, nor BTS Management and Consulting, LLC, nor Mortgage Services, LLC performed any services in consideration of the payments Peterson received from Genuine Title.

48.     Peterson did not disclose his participation in the Pay-to-Play Scheme to consumers to whom he and his team offered or provided mortgage-loan services.

49.     Between 2011 and 2013, Peterson received about $265,000 from Genuine Title through BTS Management and Consulting, LLC and Mortgage Services, LLC for loans Peterson, or loan officers managed by Peterson, referred to Genuine Title for settlement services.

## G.     Angela Pobletts

50.     Angela Pobletts is a loan officer and manages teams of loan officers in the greater Baltimore area.

51.     Pobletts received payments from Genuine Title for referrals of business made under the Pay-to-Play Scheme. Genuine Title paid Pobletts roughly $200–$800 for each loan she, or loan officers she managed, referred to Genuine Title.

52.     Genuine Title did not pay Pobletts directly for the loans she referred. Instead, Genuine Title paid MARC, LLC, a Maryland entity created and controlled by Pobletts.

53.     Neither Pobletts nor MARC, LLC performed any services in consideration of the payments Pobletts received from Genuine Title.

54.     Pobletts did not disclose her participation in the Pay-to-Play Scheme to consumers to whom she and her team offered or provided mortgage-loan services.

55.     Between 2011 and 2013, Pobletts received about $130,000 from Genuine Title through MARC, LLC for loans Pobletts, or loan officers managed by Pobletts, referred to Genuine Title for settlement services.

## CAUSES OF ACTION

### Count I: Violations of RESPA
### (by the Bureau against all Defendants)

56.     The allegations in paragraphs 1–55 are incorporated by reference.

57.     Genuine Title, Glickstein, Klopp, Mandelberg, Peterson, Pobletts, Zukerberg, All County Settlements, LLC, BTS Management & Consulting, LLC, Carroll Abstracts, Inc., MARC, LLC, Mortgage Services, LLC, and R&R Marketing Group, LLC gave and received fees, kickbacks, or things of value pursuant to an agreement or understanding in connection with real-estate-settlement services involving federally related mortgage loans, in violation of RESPA, 12 U.S.C. § 2607(a).

### Count II: Violations of the CFPA
### (by the Bureau against all Defendants)

58.     The allegations in paragraphs 1–55 are incorporated by reference.

59.     The RESPA violations of the covered persons described in Count I constitute violations of § 1036 of the CFPA. 12 U.S.C. § 5536(a)(1)(A).

60.     All County Settlements, LLC and Carroll Abstracts, Inc. knowingly or recklessly provided substantial assistance to Klopp and Genuine Title in their violations of the CFPA. Therefore, under 12 U.S.C. § 5536(a)(3), All County Settlements, LLC and Carroll Abstracts, Inc. are deemed to be in violation of the CFPA to the same extent as Klopp and Genuine Title.

61.     BTS Management and Consulting, LLC and Mortgage Services, LLC knowingly or recklessly provided substantial assistance to Peterson and Genuine Title in their violations of the CFPA. Therefore, under 12 U.S.C. § 5536(a)(3), BTS Management and Consulting, LLC and Mortgage Services, LLC are deemed to be in violation of the CFPA to the same extent as Peterson and Genuine Title.

62.     MARC, LLC knowingly or recklessly provided substantial assistance to Pobletts and Genuine Title in their violations of the CFPA. Therefore, under 12 U.S.C. § 5536(a)(3), MARC, LLC is deemed to be in violation of the CFPA to the same extent as Pobletts and Genuine Title.

63.     R&R Marketing Group, LLC knowingly or recklessly provided substantial assistance to Mandelberg and Genuine Title in their violations of the CFPA. Therefore, under 12 U.S.C. § 5536(a)(3), R&R Marketing Group, LLC is deemed to be in violation of the CFPA to the same extent as Mandelberg and Genuine Title.

### Count III:  Violations of the CPA
### (by the CPD against all Defendants)

64.     The allegations in paragraphs 1–55 are incorporated by reference.

65.     Genuine Title, Glickstein, Klopp, Mandelberg, Peterson, Pobletts, Zukerberg, All County Settlements, LLC, BTS Management & Consulting, LLC, Carroll Abstracts, Inc., MARC, LLC, Mortgage Services, LLC, and R&R Marketing Group, LLC participated in the Marketing Services Scheme, the Pay-to-Play Scheme, or both. Their failure to disclose to consumers that they were participating in these schemes constitutes the omission of a material fact which deceives or tends to deceive consumers and constitutes an unfair or deceptive trade practice, as defined by § 13-301 (3) of the CPA and is prohibited under § 13-303 of the CPA.

66.     Genuine Title, Glickstein, Klopp, Mandelberg, Peterson, Pobletts, Zukerberg, All County Settlements, LLC, BTS Management & Consulting, LLC, Carroll Abstracts, Inc., MARC, LLC, Mortgage Services, LLC, and R&R Marketing Group, LLC participated in the Marketing Services Scheme, Pay-to-Play Scheme, or both. Their failure to disclose to consumers that they were participating in these schemes constitutes an implied representation that they complied with applicable laws, which had the capacity, tendency or effect of deceiving or misleading consumers and constitutes an unfair or deceptive trade practice, as defined by § 13-301(1) of the CPA and is prohibited under § 13-303 of the CPA.

67.     Genuine Title, Glickstein, Klopp, Mandelberg, Peterson, Pobletts, Zukerberg, All County Settlements, LLC, BTS Management & Consulting, LLC, Carroll Abstracts, Inc., MARC, LLC, Mortgage Services, LLC, and R&R Marketing Group, LLC's failure to advise consumers that they were in violation of RESPA in the offer and sale of mortgage services constitutes the omission of a material fact which deceives or tends to deceive consumers and constitutes an unfair or

deceptive trade practice, as defined by § 13-301(3) of the CPA and is prohibited under § 13-303 of the CPA.

68.     Genuine Title, Glickstein, Klopp, Mandelberg, Peterson, Pobletts, Zukerberg, All County Settlements, LLC, BTS Management & Consulting, LLC, Carroll Abstracts, Inc., MARC, LLC, Mortgage Services, LLC, and R&R Marketing Group, LLC's practices are unfair because they have caused and are likely to cause substantial injury to consumers, which consumers cannot reasonably avoid. The injuries that consumers have suffered as a result of the Marketing Services Scheme and Pay-to-Play Scheme are not offset by any benefit to consumers or to competition.

69.     Genuine Title, Glickstein, Klopp, Mandelberg, Peterson, Pobletts, Zukerberg, All County Settlements, LLC, BTS Management & Consulting, LLC, Carroll Abstracts, Inc., MARC, LLC, Mortgage Services, LLC, and R&R Marketing Group, LLC's unfair and deceptive trade practices as described herein have been numerous and ongoing.

## DEMAND FOR RELIEF

Plaintiffs request that the Court:

    a.   permanently enjoin Defendants from giving or receiving money or any thing of value pursuant to an understanding that any real-estate-settlement business will be referred to any person;

    b.   permanently enjoin Defendants from engaging in unfair or deceptive trade practices, including but not limited to violations of the CPA;

    c.   award damages or other monetary relief against Defendants;

    d.   order Defendants to pay redress to consumers;

e.  order disgorgement of ill-gotten revenues by Defendants;

f.  impose civil money penalties on Defendants under the CFPA;

g.  impose civil money penalties on Defendants under the CPA;

h.  order Defendants to pay the Bureau's costs incurred in connection with prosecuting this action;

i.  order Defendants to pay the CPD's costs incurred in connection with prosecuting this action; and

j.  award additional relief as the Court may determine to be just and proper.

Respectfully submitted,

ANTHONY ALEXIS
*Enforcement Director*
JEFFREY PAUL EHRLICH
*Deputy Enforcement Director*
JOHN C. WELLS
*Assistant Litigation Deputy*


  /s/_____
GENESSA STOUT (WA Bar No. 38410) (Fed. Bar No. 801353)
LAWRENCE D. BROWN (TX Bar No. 24040586) (Fed. Bar No. 801343)
BENJAMIN KONOP (OH Bar No. 0073458)
*Enforcement Attorneys*
Consumer Financial Protection Bureau
1700 G Street, NW
Washington, D.C. 20552
Telephone (Stout): 202-435-7920
Telephone (Brown): 202-435-7116
Telephone (Konop): 202-435-7265
Facsimile: 202-435-7722
e-mail: genessa.stout@cfpb.gov
e-mail: lawrence.brown@cfpb.gov

e-mail: benjamin.konop@cfpb.gov

Attorneys for Plaintiff
Consumer Financial Protection Bureau

BRIAN E. FROSH
*Attorney General of Maryland*

___/s/_____
(signed by Genessa Stout with permission)
MICHAEL A. HOFFMAN (Md. Bar No. 7672)
LUCY CARDWELL (Md. Bar No. 7311)
Assistant Attorneys General
Office of the Attorney General
Consumer Protection Division
200 St. Paul Place, 16th Floor
Baltimore, MD 21202
Telephone (Hoffman): 410- 576-6952
Telephone (Cardwell): 410-576-6337
Facsimile: 410-576-6566
e-mail: mhoffman@ oag.state.md.us
e-mail: lcardwell@oag.state.md.us

Attorneys for Plaintiff
Consumer Protection Division
Office of the Attorney General of Maryland