**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
BALTIMORE DIVISION**

| | |
|---|---|
| CONSUMER FINANCIAL PROTECTION BUREAU<br><br>and<br><br>CONSUMER PROTECTION DIVISION, Office of the Attorney General of Maryland<br><br>Plaintiffs,<br><br>v.<br><br>GARY KLOPP,<br><br>ALL COUNTY SETTLEMENTS, LLC,<br><br>and<br><br>CARROLL ABSTRACTS, INC.,<br><br>Defendants. | Case No. 1:15-cv-01235-RDB |

**MEMORANDUM IN SUPPORT OF PLAINTIFFS' APPLICATION FOR AN ORDER TO SHOW CAUSE WHY GARY KLOPP SHOULD NOT BE HELD IN CONTEMPT**

Plaintiffs, the Consumer Financial Protection Bureau (the "Bureau") and the Consumer Protection Division of the Office of the Attorney General of Maryland (the "Division"), submit this Memorandum together with their Application for an Order to Show Cause Why Gary Klopp Should Not be Held in Contempt.

Klopp entered into a Stipulated Final Judgment and Order ("Stipulated Judgment") with Plaintiffs to settle allegations that he and his companies had engaged in a kickback scheme. He has failed to comply with the Stipulated Judgment's notification requirements and restrictions on his activities in the mortgage industry. The Stipulated Judgment prohibits Klopp from specified activities in the mortgage industry. Nevertheless, he has managed and actively overseen mortgage lending at two branch offices of an Oklahoma bank, a mortgage business that employs as many as 100 people. Between January 1, 2016 and March 31, 2017 alone, after entry of this Court's order in November 2015, he earned $765,000 from this activity.

By his actions, Klopp has made it clear that he will not stop his prohibited engagement in the mortgage business so long as it is profitable. Severe sanctions are necessary to compel him to comply with the Stipulated Judgment. Plaintiffs therefore respectfully request that this Court enter an Order to Show Cause why Klopp should not be held in contempt.

As set forth more fully in the Application for an Order to Show Cause, Klopp oversees the consumer loan application process and communicates with third parties involved in funding and closing mortgage loans, and accepted thousands of dollars in free lunches for his branch office during a twelve month period from title companies with which he does business. The evidence provides ample basis for issuing an order to show cause and finding that Klopp failed to comply with this Court's order.

**ARGUMENT**

**THE COURT SHOULD GRANT PLAINTIFFS' APPLICATION AND ENTER AN ORDER TO SHOW CAUSE WHY KLOPP SHOULD NOT BE HELD IN CONTEMPT.**

This Court has the inherent power to enforce its orders through civil contempt proceedings. Civil contempt proceedings may be initiated by the Court itself, or upon motion by any party to the action. *Shillitani v. United States*, 384 U.S. 364, 370 (1966) ("There can be no

question that courts have inherent power to enforce compliance with their lawful orders through civil contempt."). Civil contempt is appropriate where a party to a court proceeding seeks to bring another party into compliance with a court order. In *Shillitani v. United States*, 384 U.S. 368, the Supreme Court noted that the distinction between civil and criminal contempt turns on "the character and purpose of these actions." The character of a civil proceeding is remedial, and its purpose is to compel compliance with a valid court order. Civil contempt is "intended to operate in a prospective manner - to coerce, rather than punish;" *see also McComb v. Jacksonville Paper Co.*, 336 U.S. 187, 191 (1949). It does not matter what the defendant's intent was in engaging in the prohibited act. *Id*. The contempt "need not be willful," and there is no good faith exception to the requirement of obedience to a court order. *Go-Video, Inc. v. Motion Picture Ass'n. of America*, 10 F.3d 693, 695 (9th Cir. 1993).

Civil contempt is warranted where there is "clear and convincing evidence that the contemnors violated a specific and definite order of the court." *FTC v. Affordable Media, LLC*, 179 F.3d 1228 (9th Cir. 1999). When contempt proceedings are initiated upon motion, "[t]he moving party has the burden of showing by clear and convincing evidence that the contemnors violated a specific and definite order of the court. The burden then shifts to the contemnors to demonstrate why they were unable to comply." *Id.* A defendant bears the burden of showing a current inability to comply with a court order. *United States v. Rylander*, 460 U.S. 752 (1983); *see also McPhaul v. United States*, 364 U.S. 372, 379 (1960); *Maggio v. Zeitz*, 333 U.S. 56, 75-76 (1948); *Oriel v. Russell*, 278 U.S. 358, 366 (1929). Some such burden-shifting device is clearly necessary to secure compliance with judicial decrees once a prima facie case of contempt has been established.

The Supreme Court has recognized an agency's "wide discretion in its choice of a remedy deemed adequate to cope with the unlawful practices disclosed," *FTC v. Ruberoid*, 343

U.S. 470, 473 (1952). Equitable relief is particularly appropriate where the public interest is at stake. *FTC v. Ameridebt, Inc.*, 373 F. Supp. 2d 558, 562 (D.Md. 2005). In *United States v. City of Miami,* 195 F.3d 1292, 1298 (11th Cir.1999), the Eleventh Circuit described the district court's wide discretion to fashion an equitable remedy for [civil] contempt, saying that sanctions may serve to either (1) coerce the contemnor to comply with a court order, or (2) compensate a party for losses suffered as a result of the contemnor's act. *See also United States v. United Mine Workers of America,* 330 U.S. 258, 304 (1947).

In particular, in fashioning an equitable remedy for civil contempt, the Fourth Circuit held that when the sanction "is remedial and intended to coerce the contemnor into compliance with court orders or to compensate the complainant for losses sustained, the contempt is civil," and "there is no doubt that the district court can impose a fixed, monetary, civil contempt sanction to compensate for losses sustained by violation of a[n] . . . order . . . ." *Buffington v. Balt. Cty., Md.*, 913 F.2d 113, 133-34 (4th Cir. 1990).

The Eleventh Circuit in *McGregor v. Chierico,* 206 F.3d 1378, 1385 n.5, 1387-1388 (11th Cir. 2000), was faced with a scenario similar to that here. The district court exercised its inherent equitable powers to justify the use of non-injunctive equitable sanctions as a remedy for contemptuous behavior under section 13(b) of the FTC Act. *See also FTC v. Leshin,* 618 F.3d 1221, 1238 (11th Cir. 2010)*; FTC v. Security Rare Coin & Bullion Corp.,* 931 F.2d 1312, 1314 (8th Cir.1991) ("Where Congress allows resort to equity for the enforcement of a statute, all the inherent equitable powers of the district court are available for the proper and complete exercise of the court's equitable jurisdiction, unless the statute explicitly ... limits the scope of that jurisdiction."); *accord FTC v. Gem Merchandising Corp.,* 87 F.3d 466, 470 (11th Cir.1996) (holding that "section 13(b) permits a district court to order a defendant to disgorge illegally obtained funds").

The analysis which applies to consumer remedies issued under section 13(b) of the FTC Act is instructive in this case because the remedy for contemptuous conduct is closely akin to the remedy for the statutory violation which lies at the heart of this action.  *See*, *e.g., FTC v. Kuykendall*, 371 F.3d 745, 764 (10th Cir. 2004) (after proving a violation of the Permanent Injunction, the FTC was allowed to seek sanctions on behalf of injured consumers); *FTC v. Febre*, 128 F.3d 530, 536 (7th Cir. 1997) (same);  *FTC v. Gem Merchandising Corp.,* 87 F.3d at 469-470 ("because it is not always possible to distribute the money to the victims of defendant's wrongdoing, a court may order the funds paid to the United States Treasury").

The evidence is clear that Klopp violated the Stipulated Judgment in numerous respects, as set forth in paragraphs 20-23 of the Application. He continued to serve as branch manager of a mortgage business, to deal with lenders, title companies and appraisers, and to accept kickbacks for his branch from title companies.  He failed to comply with reporting requirements of the Stipulated Judgment by not reporting the Stipulated Judgment to the state licensing system, or even informing Plaintiffs that he was unable to comply, or to update with Plaintiffs his contact information or information about his responsibilities.

Thus, an order to show cause is warranted and, thereafter, the Court should impose sanctions to ensure that Klopp come into compliance with the amended Stipulated Judgment. Klopp should be ordered to comply with the injunctive provisions in an amended Stipulated Judgment that bans him from participation in the Mortgage Industry in any professional capacity and extends the reporting, notification, cooperation and compliance terms of the Stipulated Judgment for three years from the effective date of the Contempt Order.  Furthermore, he should be ordered to disgorge the income that he earned in defiance of the Stipulated Judgment.  His ongoing violations of the Court's Stipulated Judgment demonstrate that there are no other reasonable remedies available.

As explained in the Application for an Order to Show Cause filed together with this Memorandum, the clear and convincing evidence demonstrates that Klopp ignored the notice requirements of the Court's injunction and continued to engage in conduct prohibited by the Court. For these reasons, he should be ordered to show cause why he should not be held in contempt and, thereafter, sanctions should be imposed

FOR CONSUMER FINANCIAL PROTECTION BUREAU:

ANTHONY ALEXIS
Enforcement Director

JEFFREY PAUL EHRLICH
Deputy Enforcement Director

JOHN C. WELLS
Assistant Litigation Deputy

By: _____/s/_____
(signed with permission by Lucy A. Cardwell)
BENJAMIN KONOP (Ohio Bar No. 0073458)
Enforcement Attorney
1700 G Street NW
Washington, DC 20552
Email: benjamin.konop@cfpb.gov
Telephone: (202) 435-7265
Facsimile: (202) 435-7722

FOR ATTORNEY GENERAL OF MARYLAND:

Brian E. Frosh
Attorney General of Maryland

By: \_\_/s/_____
LUCY A. CARDWELL (Md. Bar No. 07311)
Special Assistant Attorney General
200 St. Paul Place, 16th Floor
Baltimore, MD 21202
Telephone: (410) 576-6337
Facsimile: (410) 576-6566
Email: lcardwell@oag.state.md.us