# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| CONSUMER FINANCIAL PROTECTION BUREAU, *et al.* | * | |
| Plaintiffs, | * | |
| v. | * | Civil Action No. RDB-15-1235 |
| GARY KLOPP, *et al.* | * | |
| Defendants. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM ORDER

Plaintiffs, the Consumer Financial Protection Bureau and the Consumer Protection Division of the Maryland Attorney General's Office (together, "Plaintiffs" or "Regulators"), filed this action against Mr. Klopp and other individuals and entities to address the Defendants' alleged participation in a kickback scheme in violation of federal and state consumer protection laws. (ECF No. 1.) On November 13, 2015, Plaintiffs and Defendants Gary Klopp, All County Settlements, LLC, and Carroll Abstracts, Inc., submitted a Stipulated Final Judgment and Order (ECF No. 51), which this Court approved and entered on November 16, 2015. (ECF No. 53.) On August 16, 2017, this Court conducted a hearing and held Mr. Klopp in civil contempt for violating the Stipulated Final Judgment and Order. (*See* ECF No. 59.)

Pending now are Plaintiffs' Motion for Sanctions (ECF No. 67) and Defendant Klopp's Motion *in Limine* to Preclude Use of Deposition of Stacey Kearney (ECF No. 69). On May 16, 2018, this Court conducted a hearing, and for the reasons set forth on the record and for the reasons set forth below, Defendant Klopp's Motion *in Limine* (ECF No. 69) is

GRANTED,[1] and Plaintiffs' Motion for Sanctions (ECF No. 67) is GRANTED IN PART and DENIED IN PART. More specifically:

1. Mr. Klopp SHALL PAY $526,796.36 to the Plaintiffs.

    a. Any supersedeas bond to stay the enforcement of this monetary judgment must amount to $632,655.63 and be posted within 14 days of any notice of appeal.

2. Mr. Klopp is completely BARRED from the mortgage industry for a period of TWO YEARS, starting TEN DAYS after the entry of this Order.

    a. He may collect his base salary through the date of the sanctions hearing, May 16, 2018, but may not receive any compensation from Peoples Bank for work after that date.

    b. This Order does not prohibit payments or reimbursements related to the requisite transfer of any assets or other interests in Peoples Bank.

3. Mr. Klopp SHALL POST this Sanctions Order to the Nationwide Mortgage Licensing System and Registry website within 60 days of this Order.

## BACKGROUND

On April 29, 2015, Plaintiffs filed a Complaint against Mr. Klopp and other individuals and entities alleging violations of the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2607(a), the Consumer Financial Protection Act of 2010, 12 U.S.C. § 5536(a)(1)(A), and the Maryland Consumer Protection Act, Md. Code Ann., Com. Law §§ 13-101 through 13-501 (2013 Repl. Vol.). (ECF No. 1.) On November 13, 2015, Plaintiffs and Defendants

---

[1] In this motion *in limine*, Mr. Klopp objects to the Kearney deposition as irrelevant and as having been conducted without leave of this Court. The deposition took place after the Plaintiffs filed their opening sanctions brief but before they filed their reply brief. The Plaintiffs have not opposed this motion *in limine* despite briefly citing Kearney's testimony as to her interest in purchasing the Owings Mills branch. This Court hereby GRANTS this motion because the Plaintiffs have not opposed the motion and because this Court sees no need to rely on the Kearney deposition to resolve the issue of sanctions.

Gary Klopp, All County Settlements, LLC, and Carroll Abstracts, Inc., submitted a Stipulated Final Judgment and Order (ECF No. 51), which this Court approved and entered on November 16, 2015. (ECF No. 53, hereinafter "Final Judgment Order.")

While these three Defendants neither admit nor deny the allegations (*id.* at ¶ 3), the Final Judgment Order, in relevant part, has imposed the following conduct requirements.

8. Pursuant to 12 U.S.C. § 5565(a)(2)(G), Defendants are limited from participation in the Mortgage Industry for two years from the Effective Date as follows:
   a. Defendants are prohibited from contacting, soliciting, or otherwise dealing with consumer borrowers or loan applicants in any capacity with regard to any mortgage business; and
   b. Defendants are prohibited from contacting, soliciting, or otherwise dealing with any third party businesses engaged in offering any settlement service.
   c. These limitations shall not prohibit Defendant Klopp from acting solely as a personnel or human-resources manager for a mortgage business operated by an FDIC insured banking institution, including providing personnel or human-resources-related management and administrative functions with regard to National Mortgage Licensing System-registered loan originators, as that term is defined in Md. Fin. Inst. Code Ann. §11-601.
9. Within 60 days of the Effective Date, Defendant Klopp must disclose this action and Order to NMLSR and, in accordance with NMLSR procedure, upload an electronic copy of this Order.

(ECF No. 53 at 5-6.) The Final Judgment Order also includes various reporting requirements related to personal contact information and business activities. (*Id.* at ¶¶ 15-17.)

On June 7, 2017, the Plaintiffs filed an Application for an Order to Show Cause Why Gary Klopp Should Not Be Held in Contempt. (ECF No. 54.) This Court issued the requested Show Cause Order on July 18, 2017. (ECF No. 55.) On August 16, 2017, the parties offered testimony and documentary evidence regarding Mr. Klopp's compliance – or lack thereof – with the reporting requirements and the conduct prohibitions. Mr. Klopp testified that he has

been working for Peoples Bank & Trust Company ("Peoples Bank") and that his management contract and compensation plan have not changed since the entry of the Final Judgment Order. He receives a small salary[2] for his duties as an HR manager plus additional compensation based on the profitability of his branches. At the August 16, 2017 hearing, Stacey Kearney, an employee at the Peoples Bank branch in Owings Mills, Maryland, testified that Mr. Klopp had ultimate control of that branch, which employed over 100 people. The evidence at the hearing also established that Mr. Klopp has owned and operated a Peoples Bank branch in California. Both branches focus entirely on brokering mortgages.

At the conclusion of the contempt hearing on August 16, 2017, this Court held Mr. Klopp in civil contempt, for the reasons stated on the record, for violating numerous provisions of the Final Judgment and Order. (ECF No. 59.) Specifically, it held that Mr. Klopp violated Paragraph 8 of the Final Judgment and Order by continuing to own and operate Peoples Bank branches in Owings Mills, Maryland and in California and by engaging in all aspects of running his mortgage businesses. In this regard, this Court specifically stated, "It is undisputed that Mr. Klopp has continued to own and operate a mortgage business; in my opinion, in a clear violation of this Court's [O]rder." This Court also held that Klopp violated Paragraph 9 by failing to upload a copy of the Final Judgment and Order to the Nationwide Mortgage Licensing System and Registry ("NMLSR"), and that he violated the reporting requirements (*see* ECF No. 53 at ¶¶15-17) by failing to inform the Plaintiffs of his address in California and his ownership and control of a Peoples Bank branch in California.[3]

---

[2] His compensation policy provides for a "base salary of $2,000 per month." (ECF No. 57-3.)
[3] The Plaintiffs also argued at the contempt hearing that Klopp violated Paragraph 7 of the Final Judgment Order by accepting kickbacks in the form of free lunches, but this Court found that Plaintiffs failed to establish such a violation.

The Court then held *sub curia* the issue of sanctions. After jointly seeking an extension of time (ECF Nos. 63-64), the parties submitted their sanctions briefs (ECF Nos. 67-71). The Regulators seek (1) disgorgement of *all* of Klopp's income from People Bank from the date of Judgment until the date of compliance, whenever that appears to be; and (2) a lifetime ban from the industry, without an exception for human resources ("HR") work. Mr. Klopp argues that these proposed sanctions are inappropriately punitive.

These initial briefs, however, did not fully address the Court's concerns, so this Court requested brief status reports on Mr. Klopp's efforts to comply with this Court's Orders. Mr. Klopp's Status Report states:

> Since the Hearing and Order, Mr. Klopp has served as a personnel or human resources manager of the Owings Mills branch, a permitted activity under Paragraph 8(c) of the Stipulated Final Judgment. He has had no communications with consumers or title companies. He . . . has not originated any consumer loans.

(ECF No. 72.) The Plaintiffs contend that Mr. Klopp's wage income "exceeds what might be expected of a personnel or human-resources manager." (ECF No. 73.) After receiving the parties' status reports, this Court scheduled a hearing for May 16, 2018, and requested that Mr. Klopp submit updated income information. On Friday, May 11, 2018, Mr. Klopp provided the requested income data.[4] This data is summarized in Court's Table A below.

---

[4] This submission came in the form of three exhibits. Exhibit 1 featured pay stubs from Peoples Bank for the period November 16, 2015 through April 27, 2018, the most recent pay period. Exhibit 2 includes spreadsheets indicating Mr. Klopp's earnings, tax withholdings, and benefits. The first spreadsheet covers the period November 16, 2015 through November 19, 2016. The second covers the period November 20, 2017 through April 27, 2018. Exhibit 3 provides a high-level summary of the two spreadsheets in Exhibit 2. These documents were not formally introduced as exhibits during the hearing. Rather, Mr. Klopp affirmed the Court's summary of the data therein.

To provide additional clarity, this Court notes that Mr. Klopp's spreadsheets feature an "Earnings" column that does not include the 401(k) match benefits. Mr. Klopp's spreadsheets also feature a "Net Pay" column that deducts benefits such as 401(k) and medical. (*See* Exs. 2-3.) This approach appears to reflect how the payments are labelled on the pay stubs, but Mr. Klopp does "not seek any credit for those deductions." (ECF No. 71).

| Court's Table A |||||
|---|---|---|---|---|
| **Peoples Bank Payroll Dates** | **Earnings** || **Taxes** ||
| 11/16/2015<br>(Entry of Final Judgment Order)<br>*to*<br>11/19/2017<br>(nearest payday to 2 years after Final Judgment Order) | 401(k) deductions | $50,000.00 | **($389,749.58)** ||
| ^ | 401(k) match | $15,200.00 | ^ ||
| ^ | 401(k) loan | $0.00 | ^ ||
| ^ | Dental | $1,080.75 | ^ ||
| ^ | Medical | $8,145.00 | ^ ||
| ^ | Other Income | $870,774.25 | ^ ||
| ^ | **SUBTOTAL** | **$945,200.00** | ^ ||
| 11/20/2017<br>(beginning of next pay period)<br>*to*<br>4/27/2018<br>(nearest payday to Klopp's pre-hearing submission) | 401(k) deductions | $2,469.44 | **($13,374.06)** ||
| ^ | 401(k) match | $1,643.10 | ^ ||
| ^ | 401(k) loan | $2,469.44 | ^ ||
| ^ | Dental | $261.81 | ^ ||
| ^ | Medical | $2,974.42 | ^ ||
| ^ | Other Income | $32,901.79 | ^ ||
| ^ | **SUBTOTAL** | **$42,720.00** | ^ ||
| **11/16/2015 - 4/27/2018** | TOTAL | **$987,920.00** | **($403,123.64)** ||

At the hearing, Mr. Klopp affirmed the accuracy of the total amount of earnings and taxes in Court's Table A. Mr. Klopp further testified at the sanctions hearing that he has filed extensions for the tax years 2015 through 2017, and that he received a federal tax refund of about $20,000 for the year 2014. He also testified that from February 2017 through September 2017 he invested $314,287.85 of his own money into the Owings Mills branch. These payments covered costs such as marketing services, phone bills, and even a $3,212 expense for the "Baltimore Ravens." (Def. Ex. 1.)[5] When asked about a lifetime ban, Mr. Klopp stated that Ms. Kearney could potentially manage the Owings Mills branch, but he has leases in his name and other obligations that would take some time – and Peoples Bank's approval – to transfer.

## STANDARD OF REVIEW

The Supreme Court in *McComb v. Jacksonville Paper Co.*, 336 U.S. 187 (1949), recognized the courts' broad authority to impose civil sanctions for violation of their orders. *Id.* at 193-94; s*ee also United States v. United Mine Workers of America,* 330 U.S. 258, 303-04 (1947); *In re General*

---

[5] Klopp also estimated having invested some $100,000 in additional funding into the business, but he failed to provide any documentary evidence to support that assertion. He also did not include this sum in any proposed calculations.

*Motors Corp.,* 61 F.3d 256, 259 (4th Cir. 1995) ("The appropriate remedy for civil contempt is within the court's broad discretion."). Courts should fashion civil contempt sanctions to "serve either or both of two purposes: to coerce the contemnor into complying in the future with the court's order, or to compensate the complainant for losses resulting from the contemnor's past noncompliance." *Colonial Williamsburg Found. v. Kittinger Co.*, 792 F. Supp. 1397, 1407 (E.D. Va. 1992), *aff'd*, 38 F.3d 133 (4th Cir. 1994) (quoting *Perfect Fit Industries, Inc. v. Acme Quilting Co.,* 673 F.2d 53, 56 (2d Cir.), *cert. denied,* 459 U.S. 832 (1982)). The remedy must be "remedial and compensatory and, unlike criminal contempt, nonpunitive." *In re General Motors,* 61 F .3d at 258 (4th Cir. 1995); *accord Carbon Fuel Co. v. United Mine Workers of America*, 517 F.2d 1348, 1349 (4th Cir. 1975) (noting that civil contempt fines must not be "intended to vindicate the authority of the Court."). To that end, the sanctions must reflect the "least possible power adequate to the end proposed." *Spallone v. United States,* 493 U.S. 265, 280 (1990).

In determining what is necessary to enforce compliance, a court may consider "disgorgement of profits . . . as a means of deterring future violations" by the contemnor. *Colonial Williamsburg,* 792 F. Supp. at 1408 (citing *Oral–B Labs., Inc. v. Mi–Lor Corp.,* 810 F.2d 20, 25–26 (2d Cir. 1987)). Furthermore, a civil contempt fine "need not always [be] depend[e]nt on a demonstration of actual pecuniary loss." *Colonial Williamsburg,* 792 F. Supp. at 1407 (quoting *Manhattan Indus., Inc. v. Sweater Bee by Banff, Ltd.*, 885 F.2d 1, 5 (2d Cir. 1989) *cert. denied,* 494 U.S. 1029 (1990)) (internal quotation marks omitted); *see also Omega World Travel, Inc. v. Omega Travel and Shipping Agencies*, 905 F.2d 1530 (Table), 1990 WL 74305 (4th Cir. 1990) (unpublished) (imposing monetary sanction based on unquantifiable, intangible harms to

7

"good will and business reputation"); *Manhattan Industries, Inc. v. Sweater Bee by Banff, Ltd.*, 885 F.2d 1, 6 (2d Cir. 1989) ("[A] contempt plaintiff is entitled to defendant's profits without submitting direct proof of injury.") (internal citations and quotations omitted); Dan B. Dobbs, in *Law of Remedies* § 2.8(2) (2d ed. 1993).

To establish the appropriate amount of monetary sanctions for civil contempt, the standard of proof is a preponderance of the evidence. *General Motors*, 110 F.3d 1003, 1016-1018 (4th Cir. 1997). The moving party bears the initial burden of proving the amount of income "attributable" to the contemptuous conduct. *Colonial Williamsburg*, 792 F. Supp. at 1407-08; *see also Nutramax Labs., Inc. v. Manna Pro Prod., LLC*, No. 0:16-CV-01255-JMC, 2017 WL 3276284, at *5 (D.S.C. Aug. 2, 2017); *Schwartz v. Rent-A-Wreck of Am.*, 261 F. Supp. 3d 607, 621 (D. Md. 2017) (observing that courts look to burden-shifting approach in substantive trademark infringement law when fashioning monetary sanctions for civil contempt). The contemnor then bears the burden "to prove any deductions . . . from the gross revenues attributable to its contempt." *Colonial Williamsburg*, 792 F. Supp. at 1407; *accord Nutramax Labs.*, 2017 WL 3276284, at *5.

## ANALYSIS

The Plaintiffs seek a multi-faceted approach to civil sanctions in this case. First, Plaintiffs argue that this Court should disgorge all of Klopp's earnings from Peoples Bank since the entry of the Final Judgment Order. Second, Plaintiffs demand that Mr. Klopp be banned from the mortgage industry for life, with no exceptions for limited roles related to human resources.[6]

---

[6] Plaintiffs have also suggested that this Court should extend the timeframe for Klopp's reporting obligations. In their papers focused on contempt, Plaintiffs initially requested a three-year extension of the timeframe for Klopp's reporting

Mr. Klopp argues that the Plaintiffs' requested sanctions are inappropriately punitive. Despite maintaining the right to appeal this Court's finding of contempt and referencing his alleged misunderstanding of the scope of the Stipulated Final Judgment and Order, Mr. Klopp has not sought a complete revocation of the Stipulated Final Judgment and Order.

## I. Disgorgement

Plaintiffs argue that Mr. Klopp has yet to comply with this Court's Orders, and therefore disgorging all income earned from Peoples Bank during the period of contemptuous conduct is the only way to fulfill the compensatory and coercive objectives of civil sanctions. Alternatively, Plaintiffs argue that a post-tax calculation would be appropriate, but only after Mr. Klopp establishes – through finalized tax returns – the amount of taxes actually paid.[7] The Plaintiffs have noted that his income appears to exceed that expected for an HR professional (*see* ECF No. 73), and they question whether he acted in an HR role in any fashion.

Defendant Klopp contends that disgorgement in *any* form would be punitive because Plaintiffs have not identified any actual damages in need of compensation. (ECF No. 68 at 10.) If the Court intends to set a specific disgorgement amount, Mr. Klopp argues that the Court should deduct business expenses and personal tax payments, and should – given the Plaintiffs' alleged inability to prove which income was attributable to his contempt – set the disgorgement at one-third of Klopp's income. (ECF No. 68 at 7 (citing *Colonial Williamsburg*, 792 F. Supp. at 1408; *Buffalo Wings Factory, Inc. v. Mohd,* 574 F. Supp. 2d 574, 582 (E.D. Va.

---

obligations. (Appl. Show Cause Order at 10, ECF No. 54.) Given this Court's ruling as to his conduct requirements, *see infra*, ongoing reporting obligations will not be necessary. That said, this Court fully expects to be kept apprised of any difficulties Mr. Klopp may have with complying with this Court's orders.

Plaintiffs also briefed an inability to pay defense, but Mr. Klopp has not advanced this defense. (*See* ECF No. 68 at 10.)

[7] Plaintiffs even suggest a two-step Order to account for any post-disgorgement changes to Mr. Klopp's tax liability, but such an approach would unnecessarily draw out these proceedings and undermine the compliance and compensation objectives of civil sanctions.

2008)).) Mr. Klopp's Status Report claims that since being held in contempt, he limited his role to "a personnel or human resources manager of the Owings Mills branch, a permitted activity under Paragraph 8(c) of the Stipulated Final Judgment." (ECF No. 72.) Mr. Klopp concedes that his compensation as a manager was based on the profitability of business, but he asserts that he does not have an "ownership" stake in the business.[8]

As an initial matter regarding disgorgement in this case, the Defendant's view that identified losses by specified consumers must undergird contempt sanctions would essentially render the Final Judgment Order in this case unenforceable. Furthermore, this Court has already recognized that "a disgorging of profits is warranted as a means of deterring future violations" by the contemnor and that a civil contempt fine may compensate *intangible* and *unquantifiable* harms. *Colonial Williamsburg*, 792 F. Supp. at 1407; *see also Omega World Travel,* 905 F.2d 1530 (Table), 1990 WL 74305; *Manhattan Industries,* 885 F.2d at 6. Similar to business reputation damages in *Omega*, 905 F.2d 1530, 1990 WL 74305, at *4, and *Colonial Williamsburg,* 792 F. Supp. at 1407, Klopp's contemptuous conduct undermines the Plaintiffs' regulatory authority. The Nationwide Mortgage Licensing System and Registry posting requirement and the limitations on Mr. Klopp's participation in the mortgage industry are targeted at protecting borrowers from illegal kickback practices (*see* ECF No. 53 at ¶ 7), and Klopp's conduct obviated those protections. Disgorgement of Mr. Klopp's contemptuous

---

[8] Mr. Klopp further argued that receiving profits from the mortgage business does not violate the Court's Orders, but that view directly contradicts this Court's ruling at the contempt hearing. In the absence of an attempt to rescind the entire Stipulated Judgment, the issue of profits has already been resolved and is no longer before the Court. Furthermore, while the terms "profit" or "ownership" are not separately listed in the Final Judgment Order, any income earned through contemptuous conduct is subject to disgorgement.

income, to be paid to the Plaintiffs,⁹ will therefore serve *both* the compliance and the compensation objectives of civil contempt sanctions.

To establish the appropriate amount of disgorgement, the moving party must first identify any income that is causally related to the contemptuous conduct. *Colonial Williamsburg*, 792 F. Supp. at 1407-08; *Schwartz,* 261 F. Supp. at 621. The contemnor then bears the burden "to prove any deductions . . . from the gross revenues attributable to its contempt." *Colonial Williamsburg*, 792 F. Supp. at 1407.

### A. Contemptuous Income

Plaintiffs have focused on proving and disgorging Klopp's *total* income, and they have disregarded that Klopp's contemptuous income should not include income properly earned in compliance with the Final Judgment Order. The first step in identifying the income that is causally related to Mr. Klopp's contempt is to establish the time period during which Mr. Klopp violated this Court's Orders. The evidence regarding his continued management activity and profits therefrom establishes that Mr. Klopp has yet to fully comply with this Court's Orders. The relevant time period for any disgorgement therefore runs from the date of Judgment, November 16, 2015 to the most recent pay period, April 27, 2018.

While Mr. Klopp objects to disgorgement of any income after November 16, 2017, the original expiration date of the Final Judgment Order (*see* ECF No. 53 at ¶¶ 6(b), 8, 17), this Court will not permit Klopp to be shielded by the expiration date of an Order with which he never complied. This Court's Order of Contempt alone was clearly insufficient to bring his

---

⁹ "If the relief provided is a fine, it is remedial when it is paid to the complainant, and punitive when it is paid to the court." *Hicks on Behalf of Feiock v. Feiock*, 485 U.S. 624, 632, 108 S. Ct. 1423, 1429, 99 L. Ed. 2d 721 (1988).

conduct into compliance with the original Final Judgment Order. Granting Klopp's request in this regard would fail to fulfill the coercive function of civil sanctions.

Between November 16, 2015 and April 27, 2018, Peoples Bank paid him a total of $987,920.00. Mr. Klopp's testimony and argument at both the contempt and sanctions hearings establish that – based on his contract and compensation agreement, which was not amended after the Final Judgment Order – Mr. Klopp received a base salary of $2,000 per month for his duties as an HR manager. From November 16, 2015 to April 27, 2018, this $2,000 monthly salary generated a total of $58,000.00 in income for Mr. Klopp. When this HR-based income is subtracted from the $987,920.00 in total earnings from Peoples Bank, the total amount of *contemptuous* income comes to $929,920.00.

**B. Deductions**

The next step is to identify any deductions proven by Mr. Klopp. *Colonial Williamsburg*, 792 F. Supp. at 1407. On this score, Mr. Klopp seeks deductions for at least $314,287.85 in expenses from February 2017 to September 2017 and for $403,123.64 in taxes withheld.

Rather than warrant a deduction from the potential disgorgement, Mr. Klopp's expenses provide further evidence of his contemptuous activity. Specifically, he paid for marketing services and for a $3,212 expense to the "Baltimore Ravens." (Def. Ex. 1.) Personally paying for thousands of dollars of marketing services has nothing to do with serving in a personnel or HR role. Mr. Klopp's decision to invest his own money on expenditures that in themselves violated the Court's Order provides no basis for a deduction. In making each payment, he assumed the risk that he would not be given credit for such payments upon the Court's discovery of his contemptuous activity.

12

Regarding his taxes, Mr. Klopp's records and testimony establish that Peoples Bank withheld $403,123.64 in taxes for the period November 16, 2015 to April 27, 2018. (*See* ECF No. 68 at 8-9; Def. Ex. 2, ECF No. 68-2.) The Plaintiffs note that these taxes have not been fully "paid" until Klopp receives finalized refunds from the government for years 2015 through 2017. Plaintiffs argue that at this stage Klopp's withholdings are mere estimates that do not warrant any deduction at all. Plaintiffs' complete disregard for Mr. Klopp's tax payments would risk transforming the disgorgement remedy into a punitive sanction. Klopp has therefore met his burden in establishing a deduction for $403,123.64 in taxes.[10] After deducting this amount from Klopp's contemptuous income, the total amount subject to disgorgement comes to $526,796.36. The following table summarizes the analysis above.

| Court's Table B ||||||
|---|---|---|---|---|---|
| Klopp's Data ||| Court's Analysis |||
| Payroll Dates | Earnings | Taxes | Base salary | Contemptuous Earnings | Post-Tax Contemptuous Earnings |
| 11/16/15 to 11/19/17 | $945,200.00 | ($389,749.58) | $48,000.00 | $897,200.00 | $507,450.42 |
| 11/20/17 to 4/27/18 | $42,720.00 | ($13,374.06) | $10,000.00 | $32,720.00 | $19,345.94 |
| TOTAL | $987,920.00 | ($403,123.64) | $58,000.00 | $929,920.00 | $526,796.36 |

Under the burden-shifting approach to analyzing disgorgement, the parties have provided sufficient evidence of Mr. Klopp's compensation for this Court to identify $526,796.36 as a justifiable amount of disgorgement. Mr. Klopp asks this Court to rely upon

---

[10] The parties have not addressed whether deducting Klopp's overall tax withholdings from the contemptuous income would give Klopp a double deduction for those taxes withheld from the $42,000.00 in HR-based salary income. This Court, however, will not engage in a *hypothetical* tax liability analysis, and whatever taxes can be said to have been withheld from the $42,000 would not change this Court's discretionary analysis of whether $526,796.36 in disgorgement sufficiently serves the compensatory and compliance functions of civil contempt sanctions.

cases where the court, faced with uncertainty as to the specific amount of contemptuous income, ordered that one-third of the proven revenues be disgorged. (ECF No. 68 at 5-6 (citing *Colonial Williamsburg*, 792 F. Supp. at 1407-08; *Buffalo Wings Factory*, 574 F. Supp. 2d at 582).) This Court need not fall back on an arbitrary fraction of Klopp's income. Notwithstanding potential amendments to Klopp's ultimate tax liability, the parties' submissions sufficiently establish that $526,796.36 in disgorgement will fulfill the objectives of civil sanctions, especially when combined with the sanctions laid out below.

### C. Supersedeas Bond

Under Rule 62(d) of the Federal Rules of Civil Procedure, Mr. Klopp may stay this Court's monetary judgment to pursue an appeal if he posts a supersedeas bond. Local Rule 110 of this Court provides that, "the amount of any supersedeas bond filed to stay execution of a money judgment pending appeal shall be 120% of the amount of the judgment plus an additional $500 to cover costs on appeal." L.R. 110.1(a) (D. Md. 2016). This Court sees no reason to depart from the Local Rule and will therefore require any supersedeas bond to be in the amount of $632,655.63, which is $500 more than 120% of $526,796.36. Such a bond must be posted within 14 days of any notice of appeal.

## II. Conduct Requirements

Regarding Plaintiffs' demand that Mr. Klopp be banned from the mortgage industry for life, Plaintiffs contend that such a ban is "the only way to ensure compliance." (ECF No. 67 at 7.) Defendant Klopp again argues that such a penalty would be punitive, noting that other Defendants in this case were banned for three years. (ECF No. 68 at 10.) He also testified that extricating himself from the business would require some time and consultation with Peoples Bank.

Plaintiffs have not convinced this Court that a lifetime ban represents the "least possible power adequate to the end proposed," *Spallone,* 493 U.S. at 280, and such a sanction would appear to be designed to vindicate the authority of the Court, which is only permissible with criminal contempt, *Carbon Fuel,* 517 F.2d at 1349. Rather, to coerce Mr. Klopp to comply with the requirement that – for a period of two years – he strictly limit his participation in the mortgage industry, this Court will extend this requirement for another two years and remove the exception for work as a "personnel or human-resources manager" found in Paragraph 8(c) of the Final Judgment Order. Removing the source of Mr. Klopp's alleged confusion will help him to bring his conduct in full compliance with this Court's Orders. To ensure further clarity, this two-year absolute bar applies to any and all activity within the mortgage industry, including consulting and working for other mortgage banks. Mr. Klopp is forewarned that any questions about this ban should be immediately directed to his counsel or this Court.

To further enable Mr. Klopp's compliance, Mr. Klopp will have 10 days from the date of this Order to completely remove himself from any and all obligations within the mortgage industry. He may collect his base salary through the date of the sanctions hearing, May 16, 2018, but may not receive any compensation from Peoples Bank for work after that date. This Order is not meant to prohibit payments or reimbursements related to the requisite transfer of any assets or other interests in Peoples Bank. Consistent with Paragraph 9 of the Final Judgment Order, Mr. Klopp must also post this Sanctions Order on the Nationwide Mortgage Licensing System and Registry website within 60 days of this Order.

## CONCLUSION

For the reasons set forth above and for the reasons set forth on the record at the hearing on May 16, 2018, Defendant Klopp's Motion *in Limine* (ECF No. 69) is GRANTED, and Plaintiffs' Motion for Sanctions (ECF No. 67) is GRANTED IN PART and DENIED IN PART. Specifically, this Court imposes the following civil sanctions.

1. Mr. Klopp SHALL PAY $526,796.36 to the Plaintiffs.

    a. Any supersedeas bond to stay the enforcement of this monetary judgment must amount to $632,655.63 and be posted within 14 days of any notice of appeal.

2. Mr. Klopp is COMPLETELY BARRED from the mortgage industry for a period of TWO YEARS, starting TEN DAYS after the entry of this Order.

    a. He may collect his base salary through the date of the sanctions hearing, May 16, 2018, but may not receive any compensation from Peoples Bank for work after that date.

    b. This Order does not prohibit payments or reimbursements related to the requisite transfer of any assets or other interests in Peoples Bank.

3. Mr. Klopp SHALL POST this Sanctions Order to the NMLSR website within 60 days of this Order.

Dated: May 21, 2018　　　　　　　　　　　_____/s/_____
　　　　　　　　　　　　　　　　　　　　Richard D. Bennett
　　　　　　　　　　　　　　　　　　　　United States District Judge