IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| CONSUMER FINANCIAL PROTECTION BUREAU, *et al.* | * | |
| Plaintiffs, | * | |
| v. | * | Civil Action No. RDB-15-1235 |
| GARY KLOPP, *et al.* | * | |
| Defendants. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

## **MEMORANDUM ORDER**

Plaintiffs, the Consumer Financial Protection Bureau and the Consumer Protection Division of the Maryland Attorney General's Office (collectively "Regulators"), filed this action against Defendant Gary Klopp ("Klopp" or "Defendant") and other individuals and entities to address the Defendants' alleged participation in a kickback scheme in violation of federal and state consumer protection laws. (ECF No. 1.) On November 13, 2015, Plaintiffs and Defendants Klopp, All County Settlements, LLC, and Carroll Abstracts, Inc., submitted a Stipulated Final Judgment and Order (ECF No. 51), which this Court approved and entered on November 16, 2015. (ECF No. 53.) This Court subsequently found that Klopp was in violation of that Order and held him in civil contempt on four separate grounds. (*See* ECF No. 59.) Ultimately, it was ordered that the Defendant Klopp was to pay $526,796.36 as disgorgement of profits wrongfully gained. (ECF No. 77.) The United States Court of Appeals for the Fourth Circuit affirmed this Court's Order on three of those grounds but held one finding, that Klopp was in contempt for owning his mortgage business, was erroneous. *See Consumer Fin. Protection Bureau v. Klopp*, 957 F.3d 454, 465 (4th Cir. 2020). The Fourth Circuit

1

vacated this Court's order and remanded the case for a recalculation of the contempt remedy. *Id.* at 467.

Presently pending is the Regulators' Motion for Entry of Monetary Remedy (ECF No. 101) in which the Regulators move for a monetary remedy against Klopp requiring him to disgorge $269,722.14 in profits that he earned while acting in violation of the Consent Order. This figure represents almost a fifty-percent reduction in the earlier sanctions figure. The parties' submissions have been reviewed and no hearing is necessary. *See* Local Rule 105.6 (D. Md. 2018). For the reasons that follow, the Regulators' Motion for Entry of Monetary Remedy (ECF No. 101) is GRANTED.

## BACKGROUND

On April 29, 2015, the Regulators filed a Complaint against Klopp and other individuals and entities alleging violations of the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2607(a), the Consumer Financial Protection Act of 2010, 12 U.S.C. § 5536(a)(1)(A), and the Maryland Consumer Protection Act, Md. Code Ann., Com. Law §§ 13-101 through 13-501 (2013 Repl. Vol.). (ECF No. 1.) On November 13, 2015, Plaintiffs and Defendants Gary Klopp, All County Settlements, LLC, and Carroll Abstracts, Inc., submitted a Stipulated Final Judgment and Order (ECF No. 51), which this Court approved and entered on November 16, 2015. (ECF No. 53, hereinafter "Consent Order.")

While these three Defendants neither admitted nor denied the allegations (*id.* at ¶ 3), the Consent Order, in relevant part, imposed the following conduct requirements.

> 8. Pursuant to 12 U.S.C. § 5565(a)(2)(G), Defendants are limited from participation in the Mortgage Industry for two years from the Effective Date as follows:

   a. Defendants are prohibited from contacting, soliciting, or otherwise dealing with consumer borrowers or loan applicants in any capacity with regard to any mortgage business; and
   b. Defendants are prohibited from contacting, soliciting, or otherwise dealing with any third party businesses engaged in offering any settlement service.
   c. These limitations shall not prohibit Defendant Klopp from acting solely as a personnel or human-resources manager for a mortgage business operated by an FDIC insured banking institution, including providing personnel or human-resources-related management and administrative functions with regard to National Mortgage Licensing System-registered loan originators, as that term is defined in Md. Fin. Inst. Code Ann. §11-601.
9. Within 60 days of the Effective Date, Defendant Klopp must disclose this action and Order to NMLSR and, in accordance with NMLSR procedure, upload an electronic copy of this Order.

(ECF No. 53 at 5-6.) The Consent Order also includes various reporting requirements related to personal contact information and business activities. (*Id.* ¶¶ 15-17.) Klopp agreed to report to the Regulators any changes in (1) his residence, (2) his roles in "any business activity," and (3) "any entity in which [he had] an ownership interest" for two years. (*Id.*) Klopp also agreed to notify the Regulators of "any developments that [might] affect compliance obligations arising under the Consent Order." (*Id.* ¶ 15.)

Throughout the two years following the filing of the Consent Order, Klopp, in the words of the Fourth Circuit, "defied the Consent Order with aplomb." *Klopp*, 957 F.3d at 460. Without notifying the Regulators, he rented a house in California and opened a new branch of the Peoples Bank & Trust in Orange County. *Id.* Klopp never uploaded the Consent Order to the Registry and admittedly continued to engage with third-party settlement services. *Id.* His employment agreement with the People Bank & Trust compensated him based on the greater of a $2,000 a month salary or certain profits earned by his brokerage branches. *Id.*

3

Between January 2016 and March 2017, the business generated an estimated $765,000 in profits, $700,000 of which Klopp allocated to his own earnings. *Id.*

At the conclusion of a contempt hearing held on August 16, 2017, this Court held Klopp in civil contempt, for the reasons stated on the record, for violating numerous provisions of the Consent Order. (ECF No. 59.) Specifically, this Court found Klopp in contempt on four grounds: (1) for communicating with third parties involved in settlement services; (2) for failing to upload the Consent Order to the National Mortgage Licensing System; (3) for failing to notify the Regulators when he relocated to California and opened a mortgage business branch there; and (4) for owning and managing a mortgage business. (*See* ECF No. 77.)

After holding Klopp in contempt, this Court held a sanctions hearing. (ECF 74.) At the hearing Klopp acknowledged $987,920 in profits from his business for the period between the effective date of the Consent Order, November 16, 2015, and April 27, 2018. *Klopp*, 957 F.3d at 460. This Court rejected Klopp's arguments that receiving profits from his business did not violate the Consent Order, as well as his suggestion that money he invested in the business should be deducted from that amount. (ECF No. 77.) This Court also rejected Klopp's argument that his earnings accruing after the expiration of the Consent Order in November 2017 should be considered, as Klopp should not be protected by the expiration of an Order with which he never complied. (*Id.*) On the other hand, this Court did not accept the Regulators' argument that all of Klopp's earnings during the relevant time period should be disgorged. (*Id.*) Instead, this Court deducted $2,000 in monthly compensation paid to

Klopp for his work as human resources manager in addition to Klopp's tax withholdings, reducing the profits to $526,796.26 and ordering him to disgorge that amount. (*Id.*)

On April 27, 2020, the Fourth Circuit affirmed this Court's contempt ruling, finding that Klopp had knowingly violated three separate paragraphs of the Consent Order. See *Klopp*, 957 F.3d at 465-66. However, the Fourth Circuit disagreed with this Court's holding that his management of the business was categorically barred by the Consent Order. *Id.* at 465. The Fourth Circuit remanded the matter for recalculation of the sanction amount consistent with its opinion. On August 14, 2020, the Regulators filed the presently pending Motion for Entry of Monetary Remedy (ECF No. 101), seeking Klopp's disgorgement of profits earned while acting in violation of the three separate paragraphs of the Consent Order.

## ANALYSIS

As explained by the Fourth Circuit, district courts enjoy "wide latitude in imposing a sanction that is 'compensatory,' 'incentivizing,' or both." *Klopp*, 957 F.3d at 466 (quoting *Rainbow School Inc., v. Rainbow Early Education Holding LLC*, 887 F.3d 610, 620 (4th Cir. 2018)). Disgorgement is a form of sanction used by courts which involves the payment of profits arising from improper conduct. See *S.E.C. v. JT Wallenbrock & Associates*, 440 F.3d 1109, 1113 (9th Cir. 2006). The primary purpose of such sanction is deterrence "by depriving violators of their ill-gotten gains." *Klopp*, 957 F.3d at 467 (quoting *Kokesh v. S.E.C.*, 137 S. Ct. 1635, 1643 (2017)). "Considering the purpose of a civil contempt sanction, a fine imposed by the district court must be casually connected to the reasons for contempt." *Id.* (citing *Goodyear Tire & Rubber Co. v. Haeger*, 137 S. Ct. 1178, 1185-86 (2017); *CFPB v. Gordon*, 819 F.3d 1179, 1195 (9th Cir. 2016)).

5

In this case, the Fourth Circuit agreed with this Court's findings that Klopp violated the Consent Order by (1) continuing to communicate impermissibly with third-party businesses engaged in settlement services, *see id.* at 465, (2) failing to upload a copy of this Court's final order to the National Mortgage Licensing System, *see id.* at 465-66, and (3) failing to notify regulators of "any change in residence" or "any change in title or role in any business activity" when he began renting a home in California and setting up a branch of the Peoples Bank & Trust in Orange County without notice, *see id.* at 466. Each violation was significant. With respect to communications with third-party businesses, the record shows that Klopp was copied on several emails with third parties involved with settlement services and, at other times, actively negotiated with lenders regarding lending requirements and procedures. (*See* ECF Nos. 101-3, 101-4.) The Regulators have provided evidence of 164 separate instances of communications with third-party businesses in violation of paragraph 8(b) of the Consent Order. (*See id.*; *see also* Contempt Hr'g Tr. 83:7-15, ECF No. 101-1.) With respect to the failure to upload the Consent Order to the relevant registry, Klopp's "counterparties—and regulators in other jurisdictions—were disadvantaged from the lack of information in the Registry." *Klopp*, 957 F.3d at 465-66. As the Fourth Circuit noted, "in an industry where information asymmetries are a predominant factor in product pricing and selecting counterparties, the importance of this form of harm should not be minimized. *Id.* at 466 (citing *United States v. Danube Carpet Mills, Inc.*, 737 F.2d 988, 993 (11th Cir. 1984) (internal citations omitted)). Finally, with respect to the failure to notify the Regulators of his change in residence and new business activity, again the Fourth Circuit found the resulting informational harm to be significant. *Id.*

The Regulators contend that on the basis of this harm caused by Klopp's violations, he should be ordered to disgorge $269,722.14, representing the amount he earned, after taxes, during the period he defied the three express provisions of the Consent Order. (ECF No. 101.) Klopp on the other hand contends that the Regulators have not produced evidence, on this record, of any damages directly attributable to his contemptuous conduct, and accordingly, this Court should enter a remedial, no-punitive disgorgement order. (ECF No. 102.) However, "a civil compensatory sanction need not always be dependent upon proof of actual loss." *In re General Motors Corp.*, 110 F.3d 1003, 1018 n.16 (4th Cir. 1997) (citing *Manhattan Indus, Inc. v. Sweater Bee by Banff Ltd.*, 888 F.2d 1, 15 (2d Cir. 1988), *cert. denied*, 949 U.S. 1209 (1990)). In *Klopp*, the Fourth Circuit rejected the Defendant's argument that the Regulators were required to prove a specific monetary harm arising from his reporting violations. *Id.* at 465-66. Further, other courts, including one within the Fourth Circuit, have specifically held that "[d]isgorgement of profits remains a viable remedy in civil contempt proceedings, even when a plaintiff cannot demonstrate 'actual pecuniary' loss." *ePlus Inc. v. Lawson Software, Inc.*, 946 F. Supp. 2d 449, 454 (E.D. Va 2013) (collecting cases). Harm having been established by the Regulators and affirmed by the Fourth Circuit, the only question remaining in this case is the appropriate sanction.

Exercising its "broad contempt authority," *see id.* at 467, this Court finds the Regulators' request of $269,722.14 is appropriate. Where harm is difficult to calculate, "a court is wholly justified in requiring the party in contempt to disgorge any profits it may have received that resulted in whole or in part from the contemptuous conduct." *General Motors*, 110 F.3d at 1018 n.16. This is particularly true where a party has engaged in a "pattern or practice of

7

contemptuous conduct." *FTC. v. Kuykendall*, 371 F.3d 745, 764 (10th Cir. 2004). In such cases, "the district court may use the defendants' gross receipts as a starting point for assessing sanctions." *Id.* (citing *FTC v. Figgie Int'l, Inc.*, 994 F.2d 595, 605-06 (9th Cir. 1993); *FTC v. Security Rare Coin & Bullion Corp.*, 931 F.2d 1312, 1316 (8th Cir. 1991)); *see also FTC v. BlueHippo Funding, LLC*, 762 F.3d 238, 244 (2d Cir. 2014). Between November 16, 2015 and September 21, 2016, Klopp regularly violated the Consent Order in the three different ways, each affirmed by the Fourth Circuit. During that time, he earned a total of $269,722.14 in profits after taxes. (*See* ECF No. 101-5.) That amount therefore reflects the income Klopp received during the period he concealed the Consent Order from the public and his whereabouts from the Regulators, as well as any additional income he received during the period he repeatedly violated the Consent Order's communication restrictions. Disgorgement of this amount will properly vindicate this Court's authority to enter the initial court order and will "'give effect to the law's purpose of modifying the contemnor's behavior to conform to terms required in the order,'" *Klopp*, 957 F.3d at 466 (citing *Int'l Union, United Mine Workers of America v. Bagwell*, 512 U.S. 821, 828 (1994) (internal citations omitted)), while also furthering a return to "'the status quo,'" *id.* (citing *Tull v. United States*, 481 U.S. 412, 424 (1987)).

For these reasons it is HEREBY ORDERED this 25th Day of February, 2021 that:

1. Gary Klopp shall pay $269,722.14 to the Plaintiffs within 30 days of the entry of this Order;

2. The Clerk of this Court shall transmit copes of this Memorandum Order to the parties and counsel of record in the above captioned case.

_____/s/_____
Richard D. Bennett
United States District Judge